IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

TARIA MATHIS on behalf of J.T.,

        Plaintiff,

    v.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

        Defendant.

CIVIL ACTION FILE

NO. 1:13-CV-02817-JFK

## FINAL OPINION AND ORDER

Plaintiff in the above-styled case brings this action on behalf of her son, a child under the age of 18, pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).[1]   Plaintiff seeks to obtain judicial review of the final decision of the Commissioner of the Social Security Administration which denied her application for supplemental security income.  For the reasons set forth below, the court **ORDERS** that the Commissioner's decision be **REVERSED** and that the case be **REMANDED** for further proceedings.

---

[1]The court will refer to the minor child as "claimant" and to Taria Mathis as "Plaintiff" or "claimant's mother."

## I.    Procedural History

Plaintiff Taria Mathis filed an application for supplemental security income on behalf of her son, J.T., on August 27, 2009.  [Record ("R.") at 12, 55-56, 117].  The claimant is a child who allegedly became disabled on January 19, 2006, due to attention deficit/hyperactivity disorder, oppositional defiant disorder, and borderline intellectual functioning.  [Id.].  After Plaintiff's application was denied initially and on reconsideration, an administrative hearing was held on October 12, 2011.  [R. at 12, 27-54].  The Administrative Law Judge ("ALJ") issued a decision denying Plaintiff's application on February 3, 2012, and the Appeals Council denied Plaintiff's request for review on June 24, 2013.  [R. at 3-6, 9-26].  Plaintiff filed her complaint in this court on behalf of her son, the claimant, on August 26, 2013, seeking judicial review of the Commissioner's final decision.  [Doc. 3].

## II.    Facts

The claimant was born on March 15, 2001, and was a school-age child on August 27, 2009, the date the disability application was filed.  [R. at 15].  The ALJ found that the claimant has attention deficit/hyperactivity disorder, borderline intellectual functioning, and oppositional defiant disorder.  [Id.].  Although these impairments are "severe" within the meaning of the Social Security regulations, the

AO 72A

(Rev.8/82)

ALJ found that the claimant does not have an impairment or combination of impairments that meets or medically equals the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. [R. at 15]. The ALJ further found that the limitations resulting from the claimant's impairments do not functionally equal those in the Listings. [R. at 16-22]. The ALJ, therefore, found that the claimant has not been under a disability since the application was filed. [R. at 23].

The decision of the ALJ [R. at 12-22] states the relevant facts of this case as modified herein as follows:

Records from Babies Can't Wait show that the claimant had speech and language delays at age two. There were notes regarding asthma with use of an inhaler. He received treatment for these, and at the hearing, his mother conceded that these impairments had resolved. (Exhibit 1F).

Kids First Pediatric Group records note that the claimant was diagnosed with attention deficit/hyperactivity disorder ("ADHD") in March 2006. Adderall was prescribed. He was not seen again until April 16, 2007. He had not been taking medications because he had not been seen since March 2006. The claimant was to take Adderall for 30 days and receive behavioral therapy. (Exhibit 2F).

AO 72A

(Rev.8/82)

The claimant received care for asthma at Jonesboro Pediatrics. Additionally, he had treatment for a laceration, viral syndrome, and other routine illnesses that resolved. Notes dated February 19, 2009, state that the claimant was doing well. He was active and playful. Focalin was prescribed for his ADHD. (Exhibits 3F, 6F, 10F and 11F). Notes from Mindful Strategies showed that the claimant had counseling sessions in an attempt to aid in reducing his ADHD symptoms. (Exhibit 15F).

The claimant's mother alleged that he had significant behavioral problems. He was identified as having symptoms of ADHD in 2006, but no treatment was recommended at that time. (Exhibit 2F). The claimant was in a regular classroom. His mother stated that the claimant was disrespectful to authority figures. She said that the claimant had a bad temper and would hit the wall with his fist.

Intelligence testing found consistently that the claimant had below average intelligence. (Exhibits 4F and 16F). However, the claimant's scores do not fall in the mentally retarded range, and although he received special services, he was never retained. The claimant's fourth grade teacher noted that the claimant was below grade level in performance. (Exhibit 18F). He has a serious problem in this area. He had been considered for special services for specific learning disability. (Exhibit 16F).

AO 72A

(Rev.8/82)

However, it appeared that the poor achievement was the result of emotional/behavioral problems (which were identified first) rather than intellectual deficits.

Teacher questionnaires, counseling notes, and pediatric notes show that the claimant had daily problems attending and completing tasks. (Exhibit 12F). The claimant was easily distracted and required one-on-one assistance. He was disruptive in class, talking out of turn, and making noises irrelevant to the content discussed. He had to be redirected to task every few minutes, and he required short assignments. (Social Security Ruling ("SSR") 09-04p).

A behavior plan was implemented at school to attempt to correct the claimant's poor behavior choices. He had a serious problem following rules. (Exhibits 12F, 15F, and 19F; SSR 09-5p). School records indicate that the claimant does not demonstrate consistent control over his behavior. He did not cooperate in being responsible for taking his medications or returning his assignments to school. (Exhibits 12F, 15F, and 19F; SSR 09-7p). The claimant's medications have not caused any difficulties; in fact, the claimant is able to function better with medications. (SSR 09-8p).

Additional facts will be set forth as necessary during discussion of Plaintiff's arguments.

5

### III.   Standard of Review

Social Security law provides that an individual under the age of eighteen will be considered disabled if he "has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 1382c(a)(3)(C)(i).  The impairment or impairments must result from anatomical, psychological, or physiological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.  42 U.S.C. §§ 1382c(a)(3)(D).

Social Security regulations provide a sequential evaluation process consisting of three steps when determining if a child is disabled.  20 C.F.R. § 416.924.  The first step requires the ALJ to determine whether the child is engaged in substantial gainful activity.  A child is not disabled if he is engaged in such activity.  Id.  If the child is not engaged in substantial gainful activity, then the ALJ must determine at the second step whether the child has a severe impairment.  Id.  A child who does not have a severe impairment will be found not disabled.  If a severe impairment is found, then the ALJ must determine whether the impairment meets, medically equals, or

6

functionally equals the severity of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Id.

The scope of judicial review of the Commissioner's final decision is limited. "We review the Commissioner's decision to determine if it is supported by substantial evidence and based upon proper legal standards." Lewis v. Callahan, 125 F.3d 1436, 1439 (11th Cir. 1997). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Id. at 1440. "Even if the evidence preponderates against the [Commissioner's] factual findings, we must affirm if the decision reached is supported by substantial evidence." Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990). "'We may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner].'" Phillips v. Barnhart, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (quoting Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983)).

**IV.    Findings of the ALJ**

The ALJ made the following findings:

1.    The claimant was born on March 15, 2001. Therefore, he was a school-age child on August 27 ,2009, the date the application was filed, and is currently a school-age child. (20 C.F.R. § 416.926a(g)(2)).

2.     The claimant has not engaged in substantial gainful activity since the application date.  (20 C.F.R. §§ 416.924(b) and 416.971, *et seq.*).

3.     The claimant has the following severe impairments: attention deficit/hyperactivity disorder, borderline intellectual functioning, and oppositional defiant disorder.  (20 C.F.R. § 416.924(c)).

4.     The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (20 C.F.R. §§ 416.924, 416.925, and 416.926).

5.     The claimant does not have an impairment or combination of impairments that functionally equals the severity of the listings.  (20 C.F.R. §§ 416.924(d) and 416.926a).

6.     The claimant has not been disabled, as defined in the Social Security Act, since August 27, 2009, the date the application was filed.  (20 C.F.R. § 416.924(a)).

[R. at 15-22].

## V.     Discussion

In the present case, the ALJ found at the first step of the sequential evaluation that the claimant has not engaged in substantial gainful activity since August 27, 2009, the application date.  [R. at 15].  At the second step, the ALJ determined that the claimant has attention deficit/hyperactivity disorder ("ADHD"), borderline intellectual functioning, and oppositional defiant disorder and that these are severe impairments. [Id.].  The ALJ concluded at the third step of the sequential evaluation that the

8

claimant is not disabled because he does not have an impairment or combination of impairments that meets, medically equals, or functionally equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  [R. at 15-22].  Therefore, the ALJ found that the claimant was not disabled as defined by the Social Security regulations since the date his application was filed.  [R. at 22].

Plaintiff argues that substantial evidence does not support the ALJ's decision that the claimant does not have an impairment or combination of impairments that functionally equals the severity of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  "[E]ven if the limitations resulting from a child's particular impairment are not comparable to those specified in the Listings, the ALJ can still conclude that those limitations are 'functionally equivalent' to those in the Listings. In making this determination, the ALJ assesses the degree to which the child's limitations interfere with the child's normal life activities." Shinn ex rel. Shinn v. Comm'r of Social Security, 391 F.3d 1276, 1279 (11th Cir. 2004).  The child's functioning in the following six domains will be considered: acquiring and using information; attending and completing tasks; interacting and relating with others; moving about and manipulating objects; caring for oneself; and health and physical well-being.  20 C.F.R. § 416.926a(b)(1).  The child's impairment functionally equals

the Listings if he has "marked" limitations in two of the above-listed domains or "extreme" limitations in one domain.  20 C.F.R. § 416.926a(d).  A marked limitation is one that "interferes seriously with [the claimant's] ability to independently initiate, sustain, or complete activities."  20 C.F.R. § 416.926a(e)(2)(i).  An extreme limitation is one that "interferes very seriously with [the claimant's] ability to independently initiate, sustain, or complete activities."  20 C.F.R. § 416.926a(e)(3)(i).  The ALJ in the present case found that the claimant does not have a disability because he is not extremely limited in any domain and has marked limitations in only one domain: attending and completing tasks.  [R. at 16-22].

Plaintiff argues that the ALJ failed to properly evaluate the record evidence when she found that the claimant has less than marked limitations in acquiring and using information.  [Doc. 12].  The domain of acquiring and using information considers how well a child acquires or learns information and how well he uses the information he has learned.  See 20 C.F.R. § 416.926a(g).  The relevant Social Security regulation provides:

> When you are old enough to go to elementary and middle school, you should be able to learn to read, write, and do math, and discuss history and science.  You will need to use these skills in academic situations to demonstrate what you have learned; e.g., by reading about various subjects and producing oral and written projects, solving mathematical

10

problems, taking achievement tests, doing group work, and entering into class discussions.  You will also need to use these skills in daily living situations at home and in the community (e.g., reading street signs, telling time, and making change).  You should be able to use increasingly complex language (vocabulary and grammar) to share information and ideas with individuals or groups, by asking questions and expressing your own ideas, and by understanding and responding to the opinions of others.

20 C.F.R. § 416.926a(g)(2)(iv).  The regulation lists the following as examples of limited functioning in acquiring and using information:

(i)     You do not demonstrate understanding of words about space, size, or time; e.g., in/under, big/little, morning/night.

(ii)    You cannot rhyme words or the sounds in words.

(iii)   You have difficulty recalling important things you learned in school yesterday.

(iv)    You have difficulty solving mathematics questions or computing arithmetic answers.

(v)     You talk only in short, simple sentences and have difficulty explaining what you mean.

20 C.F.R. § 416.926a(g)(3).

"[S]chool records are often a significant source of information about limitations in the domain of 'Acquiring and using information.'  Poor grades or inconsistent academic performance are among the more obvious indicators of a limitation in this domain. . . ." SSR 09-3p.  Other indications of limitations in this domain are: special education services; occupational, physical, or speech/language therapy, or

11

psychological and counseling services; and other accommodations made for the child's impairments, such as front-row seating, tutoring, more time to take tests, and having tests read to the student. Id. "[T]he Commissioner will find that a claimant has a marked limitation when: (1) the claimant has 'a valid score that is two standard deviations or more below the mean, but less than three standard deviations, on a comprehensive standardized test designed to measure ability or functioning in that domain'; and (2) the claimant's 'day-to-day functioning in domain-related activities is consistent with that score.'" Jackson ex rel. K.J. v. Astrue, 734 F. Supp. 2d 1343, 1371 (N.D. Ga. 2010) (quoting 20 C.F.R. § 416.926a(e)(1)(iii)).

In the present case, the claimant was evaluated by treating psychiatrist Dr. Dauda Griffin for the first time in June 2010. [R. at 395-98]. Dr. Griffin diagnosed the claimant with ADHD, oppositional defiant disorder, mood disorder, psychotic disorder, and an "intellectual impairment mild–IQ 55-70." [R. at 397]. In September 2010, Dr. Griffin completed a disability evaluation of the claimant. [R. at 459-63]. Dr. Griffin found that the claimant has marked limitations in two functional domains: attending and completing tasks and acquiring and using information. [Id.]. Medical records show that the claimant continued seeing Dr. Griffin approximately every month through mid-2011. [R. at 384-98, 455-508]. If Dr. Griffin's opinion had been

12

credited by the ALJ, the claimant would have been found disabled because his impairments functionally equal the severity of the Listings.  The ALJ considered but rejected the opinion of Dr. Griffin when she concluded that the claimant has less than marked limitations in the domain of acquiring and using information.  [R. at 18].

The relevant regulations promulgated by the Social Security Administration state in pertinent part:

> (2)    Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations. . . .
>
>> (i)    Generally, the longer a treating source has treated you . . . the more weight we will give to the source's medical opinion. . . .

20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).  A treating source's opinion will be given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record.  Id.  If the treating source's opinion is not given controlling weight, then the Commissioner is required to apply the following six factors in determining the weight to give the opinion: (1) length of the treatment relationship

13

and the frequency of examination; (2) nature and extent of the treatment relationship; (3) supportability; (4) consistency; (5) specialization; and (6) any other relevant factors.  See 20 C.F.R. §§ 404.1527(c), 416.927(c).

The Eleventh Circuit has consistently held that opinions of treating physicians must be accorded substantial or considerable weight by the Commissioner unless good cause exists to discredit these opinions.  See Lewis, 125 F.3d at 1440; Lamb v. Bowen, 847 F.2d 698, 703 (11th Cir. 1988); Walker v. Bowen, 826 F.2d 996, 1000 (11th Cir. 1987); MacGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir. 1986); Broughton v. Heckler, 776 F.2d 960, 961 (11th Cir. 1985).  "Good cause exists 'when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records.'"  Winschel v. Comm'r of Social Security, 631 F.3d 1176, 1179 (11th Cir. 2011) (quoting Phillips, 357 F.3d at 1241).  An ALJ may disregard a treating physician's opinion with good cause, but the reasons for doing so must be clearly articulated in the ALJ's decision.  Id.

The ALJ found that the claimant has marked limitations in attending and completing tasks but rejected Dr. Griffin's opinion that the claimant also has marked limitations in acquiring and using information.  [R. at 18, 459-63].  The ALJ noted in

14

her decision that her finding is "inconsistent with the treating source opinion" issued by Dr. Griffin.  [R. at 18].  However, the ALJ offered no further discussion of Dr. Griffin's opinion and did not present any reasons for rejecting it.  [Id.].  The court finds that the ALJ's rejection of Dr. Griffin's opinion was the result of a failure to apply the proper legal standards and was not supported by good cause.

The Commissioner points out that Dr. Griffin indicated that the claimant's ADHD is not at the same level of severity while he is on medication.  [R. at 465; Doc. 13 at 14].  The Commissioner argues that on this basis the claimant is not disabled because his conditions are controlled by medication.  [Id.].  However, the ALJ did not mention this in her decision, and the court will not affirm "simply because some rationale might have supported the ALJ's conclusion."  Owens v. Heckler, 748 F.2d 1511, 1516 (11th Cir. 1984).  Furthermore, the relevant issue is the extent to which the claimant is limited in his ability to acquire and use information.  Dr. Griffin found that the claimant is markedly limited in this domain, and it is not clear that the treating psychiatrist believed that medication improves the claimant's abilities in acquiring and using information.  [R. at 459-65].

15

The ALJ wrote that she gave significant weight to the opinions of non-examining State agency consultants who completed assessments of the claimant's functioning in March 2009 and July 2010. [R. at 280-85, 378-83]. In the March 2009 assessment, the consultants opined that the claimant is markedly limited in only one domain: attending and completing tasks. [R. at 282-83]. The consultants opined in the July 2010 assessment that the claimant is not markedly limited in any domain. [R. at 380-81]. The ALJ stated that she gave significant weight to these opinions because "they are consistent with the treatment notes and testimony." [R. at 17]. No other explanation was offered by the ALJ, and the court finds that the opinions of the non-examining sources did not provide the ALJ with a sufficient basis for discrediting Dr. Griffin's opinion.

The Eleventh Circuit has repeatedly "cautioned against rejecting the opinions of treating physicians in favor of the contrary conclusions of consultants who have merely examined an applicant's medical records" absent a showing of good cause. Hillsman v. Bowen, 804 F.2d 1179, 1182 (11th Cir. 1986); accord Jones v. Bowen, 821 F.2d 551, 554 (11th Cir. 1987) (citing Broughton, 776 F.2d at 961). To "attempt to evaluate disability without personal examination of the individual and without evaluation of the disability as it relates to the particular person is medical sophistry at

16

its best."  <u>Spencer on behalf of Spencer v. Heckler</u>, 765 F.2d 1090, 1094 (11th Cir.

1985) (citations omitted).  In spite of these warnings, the ALJ rejected the opinion of

Dr. Griffin, an examining psychiatrist who saw the claimant on a monthly basis for

more than a year, in favor of State agency consultants who merely reviewed the

claimant's record.  <u>See</u> 20 C.F.R. § 404.1527(d)(2)(i) ("Generally, the longer a treating

source has treated you . . . the more weight we will give to the source's medical

opinion. . . .").

        As noted *supra*, the ALJ stated that she gave significant weight to the non-

examining consultants' opinions because "they are consistent with the treatment notes

and testimony."  [R. at 17].  The ALJ, however, did not identify any specific

documents in support of this assertion.  Furthermore, there is evidence in the record

that is not consistent with the non-examining consultants' opinions regarding the

claimant's limitations in acquiring and using information.  A speech language

pathologist completed a questionnaire in February 2009 and noted that the claimant

had language deficits when answering questions, stating facts, sequencing events,

naming objects, and retrieving information.  [R. at 259-61].  These findings are

consistent with the relevant regulation's description of examples of limited

17

functioning in acquiring and using information, such as having difficulty "explaining what you mean." 20 C.F.R. § 416.926a(g)(3).

The claimant's fourth grade teacher also completed a questionnaire in December 2010 and indicated that the claimant has serious or very serious problems in the majority of activities under the domain of acquiring and using information. [R. at 444-54]. The teacher found that the claimant has a very serious problem in comprehending oral instructions and serious problems in understanding school and content vocabulary, reading and comprehending written material, comprehending and doing math problems, providing organized oral explanations and adequate descriptions, learning new material, and applying problem-solving skills in class discussions. [R. at 448]. These findings are consistent with Dr. Griffin's opinion and are contrary to the non-examining consultants' opinions. See 20 C.F.R. § 416.926a(e)(2)(i). In light of this evidence, the court finds that the ALJ erred when she rejected Dr. Griffin's opinion without explanation and gave significant weight to contrary opinions issued by State agency consultants.

Although the ALJ offered reasons for finding that the claimant had less than marked limitations in acquiring and using information, the stated reasons are not sufficient for the court to conclude that substantial evidence supports the ALJ's

18

decision.   The ALJ wrote that "[i]ntelligence testing found consistently that the claimant had below average intelligence" but that his "scores do not fall in the mentally retarded range."  [R. at 18].  As Plaintiff points out, it appears that the ALJ believed that a finding of less than marked limitations in acquiring and using information was required based on these scores and on the fact that the claimant "was never retained."   [R. at 18; Doc. 12 at 16].   If this was, in fact, the ALJ's understanding, it was incorrect.  Social Security regulations provide that a marked or even extreme limitation may be found when a claimant has a test score that is slightly higher than two standard deviations below the mean, if other information in the claimant's case record shows that his day-to-day functioning is seriously or very seriously limited because of his impairments.  See 20 C.F.R. § 416.926a(e)(4)(ii)(A). The previously discussed records from the claimant's treating psychiatrist and fourth grade teacher show that the claimant has this level of limitations.  Furthermore, evidence in the record reveals that many of the claimant's IQ scores have been found to be below 70.  The claimant had a working memory IQ of 68 in September 2007, and in July 2009, he was found to have a full-scale IQ of 67 and a verbal IQ of 59.  [R. at 287, 400].  There is conflicting evidence on this issue, and the ALJ did not adequately

19

address it when she merely stated that the claimant's scores are not in the mentally retarded range.  [R. at 18].

There is also conflicting evidence with regard to whether the claimant was ever retained.  The claimant's mother reported in November 2009 that the child had never been retained and this is what the ALJ stated when she explained her finding that the claimant has less than marked limitations in acquiring and using information.  [R. at 18, 299].  However, a transcript from May 2010 states that the claimant was retained following the third grade.  [R. at 370].  This notation is placed above the claimant's CRCT scores indicating that he did not meet the required standards.  [Id.].  The court is unable to determine from the record whether the ALJ was correct when she wrote that the claimant "was never retained."  [R. at 18].

The ALJ stated that she found that the claimant has less than marked limitations in acquiring and using information because "it appeared that the poor achievement was the result of emotional/behavioral problems (which were identified first) rather than intellectual deficits."  [R. at 18].  It is not clear how the ALJ came to this conclusion.  The ALJ cited to a psychoeducational evaluation report completed by a school psychologist in December 2010.  [R. at 18, 399-413].  However, the psychologist wrote that the claimant's academic underachievement and failure to

20

respond to interventions are "most probably indicative of cognitive processing deficits or a Specific Learning Disability (SLD)." [R. at 405]. This statement is not consistent with the ALJ's finding that the claimant's underachievement was due to emotional and behavioral problems rather than intellectual deficits. And, although the ALJ asserted that the claimant's intellectual deficits were identified after his emotional and behavioral problems, the record evidence does not support this assertion. As Plaintiff notes, the claimant's mother was concerned about his expressive language delays when he was two years old, he began receiving academic support at age three as a student with a "Significant Developmental Delay," and his pre-kindergarten teacher recommended one-on-one instruction and expressed concerns about his behavior, speech, and academics. [R. at 182, 373, 400]. Even assuming that the claimant's emotional and behavioral problems had been identified before his intellectual deficits, it is unclear what relevance this has on the ALJ's finding that the claimant has less than marked limitations in acquiring and using information.

Furthermore, behavioral problems such as those related to ADHD can have an effect on multiple functional domains. As previously noted, the ALJ found that the claimant's ADHD is a severe impairment and that he has marked limitations in attending and completing tasks. [R. at 18-19]. Social Security Ruling 09-4p

21

recognizes that "because the ability to attend and to complete tasks is involved in nearly everything a child does, an impairment(s) that affects this ability may cause limitations in other domains." SSR 09-4p. The Ruling goes on to state that the "effects of inattention and hyperactivity can impede the learning process and affect competence in many areas of life." Id. Thus, a school-age child's ADHD can have negative effects on academic performance and on the ability to acquire and use information. Id. In light of these facts, the court finds that the ALJ erred when she concluded that a finding of less than marked limitations in acquiring and using information was warranted because the claimant's limited abilities in this domain were affected by his emotional and behavioral problems.

## VI.    Conclusion

In summary, the undersigned concludes that remand is warranted in this case because the ALJ did not apply the proper legal standards, and the court is unable to determine whether Plaintiff has offered sufficient record evidence to establish that his impairments functionally equal the severity of the Listings. It is, therefore, **ORDERED** that the Commissioner's decision be **REVERSED** and that this action be **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for further

22

proceedings in accordance with the above discussion.  The Clerk is **DIRECTED** to enter judgment in favor of Plaintiff.

     **IT IS FURTHER ORDERED** that, in the event past due benefits are awarded to Plaintiff upon remand, Plaintiff's attorney may file a motion for approval of attorney's fees under 42 U.S.C. §§ 406(b) and 1383(d)(2) no later than thirty days after the date of the Social Security letter sent to Plaintiff's counsel of record at the conclusion of the Agency's past-due benefit calculation stating the amount withheld for attorney's fees.  Defendant's response, if any, shall be filed no later than thirty days after Plaintiff's attorney serves the motion on Defendant.  Plaintiff shall file any reply within ten days of service of Defendant's response.

     **SO ORDERED**, this 25th day of February, 2015.


JANET F. KING
UNITED STATES MAGISTRATE JUDGE

23